**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| BENJAMIN COOK AND SARAH COOK ON BEHALF OF BROOKLYN COOK, A DECEASED MINOR | ) ) ) Case No.: |
| | ) |
| Plaintiff, | ) JURY TRIAL DEMAND |
| | ) |
| v. | ) |
| | ) |
| JENNINGS COUNTY SCHOOL CORPORATION; SUPERINTENDENT NICOLE JOHNSON; PRINCIPAL LEONARD COLLETT; FORMER PRINCIPAL NICHOLAS HILL; PAMELA KELLY; JUDY ALFORD; KELLI GAMBREL; and MARY DRIVER, | ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL

Come now Plaintiffs Benjamin Cook and Sarah Cook, on behalf of Brooklyn Cook, a deceased minor, by counsel, and file their Complaint against Defendants Jennings County School Corporation, Superintendent Nicole Johnson, and Principal Leonard Collett, Former Principal Nicholas Hill, Pamela Kelly, Judy Alford, Kelli Gambrel, and Mary Driver, and allege as follows:

## PARTIES

1. At all times relevant herein, Benjamin Cook and Sarah Cook were residents of Jennings County, Indiana.

2. At all times relevant herein, Brooklyn Cook was a resident of Jennings County, Indiana and was less than eighteen (18) years of age.

3. Benjamin Cook and Sarah Cook were the parents and natural guardians of Brooklyn Cook, their daughter.

1

4.     At all times relevant herein, Defendants Jennings County School Corporation was a school corporation operating in Jennings County, Indiana.

5.     At all times relevant herein, Defendant Nicole Johnson was a resident of Jennings County, Indiana.

6.     The highest-ranking administrator for the Jennings County School Corporation is its Superintendent, Nicole Johnson, who is responsible for supervising employees of the School Corporation and ensuring their compliance with the School Corporations' policies and procedures.

7.     At all times relevant herein, Defendant Nicole Johnson was acting under color of law in her capacity as the Superintendent and is sued in her individual capacity.

8.     At all times relevant herein, Defendant Leonard Collett was a resident of Jennings County, Indiana.

9.     During the 2024-2025 school year, Defendant Leonard Collett was the Principal of North Vernon Elementary School, which is part of the Jennings County School Corporation and is in Jennings County, Indiana. As Principal of North Vernon Elementary, Defendant Leonard Collett was acting under color of law in his capacity as the Principal and is sued in his individual capacity.

10.     During all times that he served as Principal of North Vernon, Defendant Leonard Collett was responsible for carrying out the policies of Jennings County School Corporation and ensuring the school's compliance with federal and state law.

11.     At all times relevant herein, Defendant Nicholas Hill was a resident of Bartholomew County, Indiana.

12.     During the 2023-2024 school year, Defendant Nicholas Hill was the Principal of North Vernon Elementary School, which is part of the Jennings County School Corporation and is

2

in Jennings County, Indiana. As Principal of North Vernon Elementary, Defendant Nicholas Hill was acting under color of law in his capacity as the Principal and is sued in his individual capacity.

13. During all times that he served as Principal of North Vernon, Defendant Nicholas Hill was responsible for carrying out the policies of Jennings County School Corporation and ensuring the school's compliance with federal and state law.

14. Upon information and belief, Defendant Pamela Kelly is a resident of Gaston County, North Carolina.

15. At all times relevant herein, Defendant Pamela Kelly was teacher at North Vernon Elementary School and an employee and agent of JCSC. Defendant was acting under color of state law by virtue of her position at North Vernon and is sued in her individual capacity.

16. At all times relevant herein, Defendant Judy Alford was a resident of Ripley County, Indiana.

17. At all times relevant herein, Defendant Judy Alford was a teacher at North Vernon Elementary School and an employee and agent of Jennings County School Corporation. Defendant was acting under color of state law by virtue of her position at North Vernon and is sued in her individual capacity.

18. At all times relevant herein, Defendant Kelli Gambrel was a resident of Jennings County, Indiana.

19. At all times relevant herein, Defendant Kelli Gambrel was a guidance counselor at North Vernon Elementary School and an employee and agent of Jennings County School Corporation. Defendant was acting under color of state law by virtue of her position at North Vernon and is sued in her individual capacity.

20.    At all times relevant herein, Defendant Mary Driver was a resident of Jennings County, Indiana.

21.    At all times relevant herein, Defendant Mary Driver was guidance counselor at North Vernon Elementary School and an employee and agent of Jennings County School Corporation. Defendant was acting under color of state law by virtue of her position at North Vernon and is sued in her individual capacity.

22.    All individual Defendants' acts and omissions, as set forth herein, were within the course and scope of their employment with the Jennings County School Corporation.

## JURISDICTION AND VENUE

23.    This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. §1331 because Plaintiff brings a claim to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution, pursuant to 42 U.S.C. §1983. This Court has supplemental jurisdiction over the state law claims based upon 28 U.S.C. §1367.

24.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) because the acts and omissions giving rise to this claim took place within this judicial district.

## COMMON ALLEGATIONS OF FACT

25.    At all times relevant herein, Brooklyn Cook was a student at North Vernon Elementary School ("North Vernon").

26.    During the 2023-2024 school year, while Brooklyn was in the fourth grade at North Vernon, she was subjected to regular severe bullying and harassment by two (2) male students in her class.

27.    The bullying was reported to school administrators and as a result of these reports, the male students were removed from Brooklyn's classroom.

28.    After the male students' removal from the classroom, the bullying ceased, and the reminder of the 2023-2024 school year passed without further incident.

29.    During the 2024-2025 school year, when Brooklyn was in the fifth grade, the same male students were in Brooklyn's classroom again. Shortly thereafter, the same male students, along with additional male students resumed and escalated the bullying Brooklyn experienced in fourth grade.

30.    During the 2024-2025 school year, Brooklyn was repeatedly subjected to severe and pervasive bullying, harassment, and sexual abuse by male students at North Vernon.

31.    Examples of the male students' verbal harassment included, but were not limited to, telling Brooklyn that she smelled, calling her "Megamind", laughing at her, calling her fat and ridiculing her in the presence of others.

32.    The male students repeatedly told Brooklyn that she needed to kill herself.

33.    Brooklyn's friend, A.B., heard multiple male students tell Brooklyn to kill herself and reported this to Defendants Guidance Counselor Kelli Gambrel and Teacher Pamela Kelly.

34.    Upon information and belief, during the 2024-2025 school year the bullying and harassment were ongoing and occurred nearly every day leading up to Brooklyn's death on or about February 17, 2025.

35.    In addition to verbal abuse, Brooklyn was subjected to inappropriate sexual touching by male students.

36.    On multiple occasions, male students inappropriately touched Brooklyn's body without her consent.

37.    For example, Brooklyn's friend, A.B. personally witnessed a male student grab Brooklyn's buttock while at school.

38. Upon information and belief, the same male students also engaged in similar inappropriate touching of other female students.

39. The bullying, harassment, and sexual misconduct directed at Brookyln was repeatedly reported to school officials.

40. On one occasion, Brooklyn's friend, L.C., showed Guidance Counselor Gambrel a text message exchange in which a male student told Brooklyn, "fuck you kill yourself I fucking hope you die in a shit show you dumb fucking whore." In response to his text, Brookyln told him she would actually kill herself.

41. Guidance Counselor Gambrel told L.C. that she would report the matter to Principal Collett.

42. Upon information and belief, the male student who sent the message was never disciplined.

43. On multiple occasions, Brooklyn's friend, A.B., spoke directly with Principal Collette regarding the bullying, harassment, and abuse Brooklyn was experiencing.

44. On or about November 7, 2024, Brooklyn made a TikTok post stating that she didn't not want to be sexually assaulted at school anymore.

45. Andrea Corya-York, a teacher's assistant at North Vernon, reported the TikTok post to Guidance Counselor Mary Driver.

46. Guidance Counselor Driver informed Andrea Corya-York that she would report the TikTok to Guidance Counselor Gambrel and have the matter addressed.

47. On the same day, shortly after this conversation, Guidance Counselor Gambrel told Andrea Corya-York that she had spoken to Brooklyn about the TikTok and did "everything she could" or something to that effect.

6

48.     Despite these repeated reports of bullying, sexual harassment and threats of suicide, Defendants failed to take reasonable and effective action to stop the misconduct by the male students, including but not limited to removing them from the classroom as they had done in the previous year.

49.     Despite Defendants' failure to take meaningful action to stop the misconduct, Brooklyn's friends, including A.B. and L.C., continued to look out for Brooklyn and made regular reports to school officials, including Defendant Gambrel, about the bullying, harassment and sexual abuse Brooklyn was subjected to at school by male students.

50.     Upon information and belief, the male students engaging in the bullying, harassment and sexual abuse of Brooklyn were never disciplined for this bullying during the 2024-2025 school year.

51.     Upon information and belief,  Brooklyn's friends, who made frequent reports to Administration that Brooklyn was being bullied  were frequently disciplined for very trivial offenses.

52.     Shortly before her death, while Brooklyn was entering her homeroom classroom, Teacher Pamela Kelly reprimanded her for being five minutes late in a harsh and punitive tone.

53.     Upon information and belief, Brooklyn told Teacher Pamela Kelly that she was making her sad and that she was going to kill herself.

54.     Upon information and belief all, Teacher Pamela Kelly did in response to Brooklyn's suicide threat was to say to Brooklyn "Why would you do that… it won't make it better" or words to that effect.

55.     JCSC provides a Student Elementary Handbook to all elementary students. The Handbook states, in relevant part:

**JCSC HARASSMENT/BULLYING POLICY**

**It is the policy of Jennings County School Corporation to maintain a learning and working environment that is free from harassment and/or bullying. It shall be a violation of this policy for any employee or student of Jennings County School Corporation to harass another employee or student through unwelcome conduct or communications relative to race, color, national origin, religion, sex, age, handicapping condition, marital status, or sexual preference. This policy also applies to non- employee volunteers who work subject to the control of school authorities. This rule applies when a student is on school grounds immediately before, during, or after school hours, or at any other time when the school is being used by a school group; off school grounds at a school activity, function, or event; traveling to or from school for a school activity, function, or event; or using property or equipment provided by the school (example: use of school-owned computer to bully/harass someone via email or the Internet). Bullying is considered to be severe misconduct and will be dealt with accordingly. Principals will take appropriate disciplinary actions for bullying up to and including expulsion from school.**

**…**

**CYBERBULLYING**

**Cyberbullying or online bullying is a term used to refer to bullying over electronic media, usually through instant messaging and e-mail. Other terms for cyberbullying are electronic bullying, electronic harassment, e-bullying, mobile bullying, online bullying, digital bullying, or internet bullying. JCSC considers cyberbullying to be the use of any electronic communications device to convey a message in any form (text, image, audio or video) that is lewd, vulgar, defames, intimidates, harasses or is otherwise intended to harm, insult or humiliate another in a deliberate, repeated, hostile or unwanted manner under a person's false or true identity. In addition, any communication of this form which disrupts or prevents a safe and positive educational or working environment may also be considered cyberbullying.**

56.     As a result of the bullying, harassment and sexual abuse described herein, Brooklyn exhibited clear and escalating signs of emotional distress, anxiety, and psychological harm while at school including threats of suicide, lethargy, emotional withdrawal and lack of motivation.

57.     Andrea Corya-York, who also served as Brooklyn's dance instructor, observed that Brooklyn appeared happy and engaged in dance class but consistently appeared withdrawn and emotionally down while at school, and reported same to Administration.

58.     On or about February 17, 2025, Plaintiff Benjamin Cook, Brooklyn's father, walked into Brooklyn's bedroom and discovered Brooklyn's deceased body. Both parents watched in horror as Brooklyn's body was removed from their residence.

59.     On or about February 17, 2025, after enduring months of pervasive bullying, harassment, and sexual abuse from male students while at North Vernon, Brooklyn Cook died as a result of suicide at age eleven (11).

**COUNT I**
**Inadequate Polices and Protection, pursuant to 42**
**U.S.C. § 1983 Against all Defendants**

60.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

61.     At all times relevant to this complaint, Brooklyn Cook was a student at North Vernon, within the public school system overseen by Defendants JCSC, Superintendent Nicole Johnson, Principal Leonard Collett, and Former Principal Nicholas Hill.

62.     Defendants at all times relevant to this complaint were responsible for the creation and enforcement of policies and practices to protect the students, including Brooklyn Cook, who attended schools within the JCSC.

63.     Defendants had a duty to protect students such as Brooklyn Cook, when said students were on school property.

64.     Defendants have, under the color of law, deprived Brooklyn Cook of rights, privileges, and immunities secured to her by the United States Constitution including the right to be free from affirmative actions, directly increasing Brooklyn's vulnerability or otherwise placing her in danger.

65.     Defendants' conduct, actions, customs, policies and practices set forth herein deprived Brooklyn and Plaintiffs of equal protection and due process rights secured by the Fourteenth Amendment of the United States Constitution, all in violation of 42 U.S.C. § 1983. Upon information and belief, these unlawful actions included, but are not to, the following:

a. Failing to protect Brooklyn from known risks of bullying, harassment and sexual abuse;

b. Creating a dangerous environment and increasing the harm suffered by Brooklyn by failing to provide adequate supervision despite their knowledge that Brooklyn was being subjected to repeated bullying, harassment, and sexual abuse.

c. Failing to properly respond and engaging in a practice and custom that created a tacit approval of the incidents of bullying and creating a school environment where bullying, harassment, and sexual abuse of Brooklyn is acceptable;

d. Failing to properly investigate and respond to incidents of bullying of Brooklyn, thus permitting the continuation of such incidents to the detriment of Brooklyn; and

e. Failing to properly develop appropriate policies to deal with ongoing incidents of bullying, harassment and sexual abuse and failing to properly train school employees to deal with same.

66.    Upon information and belief Defendants acted with deliberate indifference toward Brooklyn.

67.    Defendants have, under color of law, deprived Brooklyn Cook of rights, privileges, and immunities secured by the United States Constitution, including the right to due process under the Fourteenth Amendment, and specifically to her right to be free from government actions that shock the conscience. *See* 42 U.S.C. § 1983.

68.    As a direct and proximate result of Defendants' actions and inactions, Brooklyn suffered substantial damages and harm including but not limited to, psychological trauma, emotional pain and suffering, and death.

69.    As a direct and proximate result of Defendants' actions and inactions, Plaintiffs suffered substantial damages and harm including but not limited to, psychological trauma and emotional pain and suffering.

70.    Defendants' unlawful deprivation of Brooklyn's federally protected rights resulted in the death of Brooklyn.

**<u>COUNT II</u>**
**Violation of Title IX, 20 U.S.C. 38 § 1681 *et seq.* Against Jennings County School Corporation, Superintendent Nicole Johnson and Principal Leonard Collett**

71.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

72.    During the 2024-2025 school year, Defendants JCSC, Superintendent Nicole Johnson, and Principal Leonard Collett had actual knowledge that male students were inappropriately touching and sexually abusing female students at the North Vernon, including Brooklyn Cook.

73.    The male students' repeated inappropriate touching and sexual abuse of female students at North Vernon constituted acts of sex-based discrimination in violation of Title IX, 20 U.S.C. 38 § 1681 *et seq.* ("Title IX").

74.    Title IX imposes an affirmative obligation on school districts to take action to remedy existing misconduct, such as the male students acts of sex-based discrimination and harassment, and to prevent further foreseeable risks to female students at North Vernon Elementary from materializing.

75.    Upon information and belief, no Title IX investigation was performed in response to any of the multiple reports of the male students' inappropriate touching and sexual abuse that occurred during the 2024-2025 school year.

76.    During the 2024-2025 school year, Defendants JCSC, Superintendent Johnson, and Principal Collett had the authority to institute corrective measures, including but not limited to disciplining the male students up to and including expulsion from the school for inappropriately touching and sexually harassing female students at North Vernon, including Brooklyn Cook, yet failed to take any reasonable action.

77.    Defendants' lack of reasonable response to reports of the male students inappropriately touching and sexually harassing female students at North Vernon amounted to an official decision *not to take action* to end or limit the male students' harassment of female students.

78.    Defendants JCSC, Superintendent Johnson, and Principal Collett remained deliberately indifferent to the male students' acts of student-student harassment, of which Defendants had actual knowledge.

79.    By their deliberate indifference to the male students' inappropriate touching and sexual harassment of female students during the 2024-2025 school year, Defendants JCSC,

Superintendent Johnson, and Principal Collett put female students at North Vernon, including Brooklyn Cook, at great risk and unreasonable risk of further inappropriate touching and sexual harassment by the male students.

80.    As a direct and proximate results of Defendants' Title IX violations, Brooklyn Cook suffered injuries of a personal and pecuniary nature including, but not limited to, pain, suffering, physical, mental and emotional trauma, loss of enjoyment of life, medical expenses, and death.

## COUNT III
### Wrongful Death Against All Defendants

81.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

82.    Defendants owed Brooklyn a duty to exercise reasonable care to protect Brooklyn and care for her safety and to provide a safe educational environment free from harassment, intimidation, bullying and sexual abuse/exploitation.

83.    Defendants owed a duty of reasonable supervision over their students for the safety of other students, including Brooklyn.

84.    Pursuant to their own policies and procedures, Defendants owed a duty to Brooklyn, and other similarly victimized to properly investigate incidents of bullying, harassment and sexual abuse immediately upon learning of the incidents.

85.    Defendants breached that duty by failing to properly train and supervise its employees, as well as supervise and discipline the students at North Vernon Elementary School, to respond appropriately in order to prevent the repeated and egregious bullying, harassment, and sexual abuse to which Brooklyn was subjected to while enrolled as a student within the Jennings County School Corporation.

86.     JCSC is liable as a principal for all torts committed by its employees within the course and scope of their employment, described herein, via the doctrine of *respondeat superior.*

87.     As a direct and proximate result of the acts described herein, Brooklyn suffered psychological trauma, emotional pain, and death.

88.     As a result of the Defendants' negligence, Brooklyn suffered a fatal bodily injury under Indiana common law and wrongful death under IC §34-23-2-1, for which her estate is entitled to recover damages against governmental entities pursuant to I.C. §34-13-3-3. All of the Defendants' wrongful conduct proximately caused Brooklyn's death.

WHEREFORE, Plaintiffs, Benjamin Cook and Sarah Cook, on behalf of Brooklyn Cook, a deceased minor, by counsel, pray that the Court enter judgment against the Defendants and for the Plaintiffs in an amount sufficiently reasonable to compensate the Plaintiffs for the damages set for forth above and for all damages available pursuant to the provisions of Indiana Code Sec. 34-23-4 *et seq.*, for the cost of this action, for attorneys' fees, for interest as allowed by law, and for all other proper relief just and proper in the premises.

## COUNT IV
### Negligence Against All Defendants

89.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

90.     Defendants owed a legal duty to Brooklyn to provide a safe educational environment free from bullying, harassment, and sexual abuse

91.     Defendants owed a duty of reasonable supervision over their students for the safety of other students, including Brooklyn.

92.     Defendants owed a duty to Brooklyn to properly and timely address incidents of bullying, harassment, and sexual abuse of students at North Vernon.

93.     Defendants were negligent in that they knew or should have known that their conduct would cause physical and emotional pain and suffering to Brooklyn and Plaintiffs.

94.     Brooklyn's death after months of bullying, harassment, and sexual abuse at North Vernon was reasonably foreseeable to Defendants.

95.     Defendants' negligence is the direct and proximate cause of the emotional and psychological harm suffered by Brooklyn leading up to her death.

96.     Defendants' negligence is the also the direct and proximate cause of Brooklyn's death and the emotional harm and loss of services, love and companionship suffered by Plaintiffs due to the untimely death of their daughter.

WHEREFORE, Plaintiffs, Benjamin Cook and Sarah Cook, on behalf of Brooklyn Cook, a deceased minor, by counsel, pray that the Court enter judgment against the Defendants and for the Plaintiffs in an amount sufficiently reasonable to compensate the Plaintiffs for the damages set for forth above and for all damages available pursuant to the provisions of Indiana Code Sec. 34-23-4 *et seq*., for the cost of this action, for attorneys' fees, for interest as allowed by law, and for all other proper relief just and proper in the premises

## COUNT V
### Negligent Hiring, Training, Supervision and Retention
### Against JCSC, and Defendants Johnson, Collett and Hill

97.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

98.     Defendants, and each of them, were negligent in failing to exercise due care in supervising and training Defendants Kelly, Alford, Gambrel, and Driver in how to properly respond to bullying, harassment, sexual abuse, and reports of bullying, harassment, sexual abuse and suicidal threats and ideations.

99.    Defendants failed to provide appropriate training to Defendants Kelly, Alford, Gambrel, and Driver and could have reasonably foreseen that inappropriately training them, and/or failing to supervise them created a risk of harm to students, including Brooklyn.

100.    Defendants' negligence in supervising and training Defendants Kelly, Alford, Gambrel, and Driver was the proximate cause of Brooklyn's injuries and damages.

WHEREFORE, Plaintiffs, Benjamin Cook and Sarah Cook, on behalf of Brooklyn Cook, a deceased minor, by counsel, pray that the Court enter judgment against the Defendants and for the Plaintiffs in an amount sufficiently reasonable to compensate the Plaintiffs for the damages set for forth above and for all damages available pursuant to the provisions of Indiana Code Sec. 34-23-4 *et seq*., for the cost of this action, for attorneys' fees, for interest as allowed by law, and for all other proper relief just and proper in the premises

## <u>COUNT VI</u>
### Negligent Infliction of Emotional Distress Against All Defendants

101.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

102.    On or about February 17, 2025, Plaintiff Benjamin Cook discovered Brooklyn's body after she had committed suicide and witnessed the gruesome aftermath of her death.

103.    In their actions and repeated failures to act, Defendants engaged in extreme and outrageous conduct that went beyond all possible bounds of decency and were atrocious and utterly intolerable in a civilized society.

104.    The actions and inactions of the Defendants, as set forth above, were either grossly negligent, intentional or reckless.

105.    The actions and inactions of the Defendants, as set forth above, caused and continue to cause severe emotional distress to the Plaintiff Benjamin Cook when he came upon his daughter Brooklyn's body.

106.    As a direct and proximate result of Defendants' negligence, Plaintiff Benjamin Cook has suffered, and will in the future continue to suffer, mental anguish, loss of enjoyment of life, emotional and psychological harm, and other past, present and future damages.

WHEREFORE, Plaintiffs pray for the Court to enter judgment against Defendants for the damages suffered by Brooklyn Cook and Plaintiffs, in an amount to be proven at trial including compensatory damages, general and special damages, punitive damages, for the costs of this action, and for all other relief just and proper in the premises.

## DEMAND FOR JURY TRIAL

Come now the Plaintiffs, Ben Cook and Sarah Cook, on behalf of Brooklyn Cook, a deceased minor, and demand that the above Complaint and all issues there in be tried by jury.

Respectfully submitted,

COHENMALAD, LLP

/s/ Gregory Laker
Gregory L. Laker, #10322-49
Andrea R. Simmons, #11622-49
Molly K. McMath, #38954-49
One Indiana Square, Ste. 1400
Indianapolis, IN 46204
Ph: (317) 636-6481
Fax: (317) 636-2593
glaker@cohenmalad.com
asimmons@cohenmalad.com
mmcmath@cohenmalad.com