**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| BENJAMIN COOK and SARAH COOK, INDIVIDUALLY, and as Personal Representatives of the Estate of BROOKLYN COOK, a Deceased Minor, | ) ) ) ) Case No.: 1:26-cv-00315-SEB-TAB |
| Plaintiff, | ) JURY TRIAL DEMAND |
| v. | ) ) |
| JENNINGS COUNTY SCHOOL CORPORATION; SUPERINTENDENT NICOLE JOHNSON; PRINCIPAL LEONARD COLLETT; FORMER PRINCIPAL NICHOLAS HILL; PAMELA KELLEY; JUDY ALFORD; KELLI GAMBREL; MARY DRIVER; Z.H J.F.; L.T.; and P.C., | ) ) ) ) ) ) ) ) |
| Defendants. | ) |

**AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

Come now Plaintiffs Benjamin Cook and Sarah Cook, Individually and as Personal Representatives of the Estate of Brooklyn Cook, a Deceased Minor, by counsel, and file their Amended Complaint against Defendants Jennings County School Corporation, Superintendent Nicole Johnson, and Principal Leonard Collett, Former Principal Nicholas Hill, Pamela Kelley, Judy Alford, Kelli Gambrel, Mary Driver, Z.H., J.F., L.T., and P.C. and allege as follows:

**PARTIES**

1.    At all times relevant herein, Benjamin Cook and Sarah Cook were residents of Jennings County, Indiana.

2.    At all times relevant herein, Brooklyn Cook was a resident of Jennings County, Indiana and was less than eighteen (18) years of age.

1

3. Benjamin Cook and Sarah Cook were the parents and natural guardians of Brooklyn Cook, their daughter, and have been court-appointed as the personal representatives of the Estate of Brooklyn Cook.

4. At all times relevant herein, Defendants Jennings County School Corporation was a school corporation operating in Jennings County, Indiana.

5. At all times relevant herein, Defendant Nicole Johnson was a resident of Jennings County, Indiana.

6. The highest-ranking administrator for the Jennings County School Corporation is its superintendent, Nicole Johnson, who is responsible for supervising employees of the School Corporation and ensuring their compliance with the School Corporations' policies and procedures.

7. At all times relevant herein, Defendant Nicole Johnson was acting under color of law in her capacity as the Superintendent and is sued in her individual capacity.

8. At all times relevant herein, Defendant Leonard Collett was a resident of Jennings County, Indiana.

9. During the 2024-2025 school year, Defendant Leonard Collett was the Principal of North Vernon Elementary School, which is part of the Jennings County School Corporation and is in Jennings County, Indiana. As Principal of North Vernon Elementary, Defendant Leonard Collett was acting under color of law in his capacity as the Principal and is sued in his individual capacity.

10. During all times that he served as Principal of North Vernon, Defendant Leonard Collett was responsible for carrying out the policies of Jennings County School Corporation and ensuring the school's compliance with federal and state law.

11. At all times relevant herein, Defendant Nicholas Hill was a resident of Bartholomew County, Indiana.

12. During the 2023-2024 school year, Defendant Nicholas Hill was the Principal of North Vernon Elementary School, which is part of the Jennings County School Corporation and is in Jennings County, Indiana. As Principal of North Vernon Elementary, Defendant Nicholas Hill was acting under color of law in his capacity as the Principal and is sued in his individual capacity.

13. During all times that he served as Principal of North Vernon, Defendant Nicholas Hill was responsible for carrying out the policies of Jennings County School Corporation and ensuring the school's compliance with federal and state law.

14. Upon information and belief, Defendant Pamela Kelley is a resident of Jackson County, Indiana.

15. At all times relevant herein, Defendant Pamela Kelley was teacher at North Vernon Elementary School and an employee and agent of JCSC. Defendant Pamela Kelley was acting under color of state law by virtue of her position at North Vernon and is sued in her individual capacity.

16. At all times relevant herein, Defendant Judy Alford was a resident of Ripley County, Indiana.

17. At all times relevant herein, Defendant Judy Alford was a teacher at North Vernon Elementary School and an employee and agent of Jennings County School Corporation. Defendant Judy Alford was acting under color of state law by virtue of her position at North Vernon and is sued in her individual capacity.

18. At all times relevant herein, Defendant Kelli Gambrel was a resident of Jennings County, Indiana.

19. At all times relevant herein, Defendant Kelli Gambrel was a guidance counselor at North Vernon Elementary School and an employee and agent of Jennings County School Corporation. Defendant Kelli Gambrel was acting under color of state law by virtue of her position at North Vernon and is sued in her individual capacity.

20. At all times relevant herein, Defendant Mary Driver was a resident of Jennings County, Indiana.

21. At all times relevant herein, Defendant Mary Driver was a guidance counselor at North Vernon Elementary School and an employee and agent of Jennings County School Corporation. Defendant Mary Driver was acting under color of state law by virtue of her position at North Vernon and is sued in her individual capacity.

22. Defendants Johnson, Collett, Hill, Kelley, Alford, Gambrel and Driver's (hereafter "Individual JCSC Defendants") acts and omissions, as set forth herein, were within the course and scope of their employment with the Jennings County School Corporation.

23. Upon information and belief, at all times relevant herein, Defendant Z.H. was a resident of Jennings County, Indiana.

24. At all times relevant herein, Defendant Z.H. was a minor and student at North Vernon Elementary School.

25. Upon information and belief, at all times relevant herein, Defendant J.F. was a resident of Jennings County, Indiana.

26. At all times relevant herein, Defendant J.F. was a minor and student at North Vernon Elementary School.

27.    Upon information and belief, at all times relevant herein, Defendant L.T. was a resident of Jennings County, Indiana.

28.    At all times relevant herein, Defendant L.T. was a minor and student at North Vernon Elementary School.

29.    Upon information and belief, at all times relevant herein, Defendant P.C. was a resident of Jennings County, Indiana.

30.    At all times relevant herein, Defendant P.C. was a minor and student at North Vernon Elementary School.

## JURISDICTION AND VENUE

31.    This Court has jurisdiction over the subject matter of this action pursuant to 18 U.S.C. § 1331 because Plaintiff brings a claim to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution, pursuant to 42 U.S.C. § 1983. This Court has supplemental jurisdiction over the state law claims based upon 28 U.S.C. § 1367.

32.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the acts and omissions giving rise to this claim took place within this judicial district.

## COMMON ALLEGATIONS OF FACT

33.    At all times relevant herein, Brooklyn Cook was a student at North Vernon Elementary School ("North Vernon").

34.    During the 2023-2024 school year, upon information and belief, while Brooklyn was in the fourth grade at North Vernon, she was subjected to regular severe bullying and harassment by Z.H. and J.F., two (2) male students in her class.

35.     The bullying was reported to school administrators and, as a result of these reports, upon information and belief, Z.H. and J.F were disciplined.

36.     After Z.H. and J.F. were disciplined, the bullying ceased, and the reminder of Brooklyn's 2023-2024 school year passed without further incident.

37.     During the 2024-2025 school year, when Brooklyn was in the fifth grade, Z.H. and J.F. were in Brooklyn's classroom again. Shortly thereafter, Z.H. and J.F. along with L.T. and P.C. (hereafter "Individual Student Defendants") resumed and escalated the bullying Brooklyn experienced in fourth grade.

38.     During the 2024-2025 school year, Brooklyn was repeatedly subjected to severe and pervasive bullying, harassment, and sexual abuse by the Individual Student Defendants.

39.     Examples of the Individual Student Defendants' verbal harassment included, but was not limited to, telling Brooklyn that she smelled, calling her "Megamind", laughing at her, calling her fat and ridiculing her in the presence of others.

40.     The Individual Student Defendants repeatedly told Brooklyn that she needed to kill herself.

41.     Brooklyn's friend, A.B., heard multiple male students tell Brooklyn to kill herself and reported this to Defendants Guidance Counselor Kelli Gambrel and Teacher Pamela Kelley.

42.     Upon information and belief, during the 2024-2025 school year, the bullying and harassment were ongoing and occurred nearly every day leading up to Brooklyn's death on or about February 17, 2025.

43.     In addition to verbal abuse, Brooklyn was subjected to inappropriate sexual touching by the Individual Student Defendants.

44.     Upon information and belief, on multiple occasions, the Individual Student Defendants inappropriately touched Brooklyn's body without her consent.

45.     For example, Brooklyn's friend, A.B. personally witnessed Z.H. grab Brooklyn's buttock while at school.

46.     Upon information and belief, the Individual Student Defendants also engaged in similar inappropriate touching of other female students at North Vernon.

47.     The bullying, harassment, and sexual misconduct directed at Brookyln was repeatedly reported to school officials.

48.     On one occasion, Brooklyn's friend, L.C., showed Guidance Counselor Gambrel a text message exchange in which a Z.H., one of the bullies, told Brooklyn, "fuck you kill yourself I fucking hope you die in a shit show you dumb fucking whore." In response to his text, Brookyln told him she would actually kill herself.

49.     Guidance Counselor Gambrel told L.C. that she would report the matter to Principal Collett.

50.     Upon information and belief, Z.H. was never disciplined.

51.     On multiple occasions, Brooklyn's friend, A.B., spoke directly with Principal Collette regarding the bullying, harassment, and abuse Brooklyn was experiencing.

52.     On or about November 7, 2024, Brooklyn made a TikTok post stating that she did not want to be sexually assaulted at school anymore.

53.     Andrea Corya-York, a teacher's assistant at North Vernon, reported the TikTok post to Guidance Counselor Mary Driver.

54.     Guidance Counselor Driver informed Andrea Corya-York that she would report the TikTok to Guidance Counselor Gambrel and have the matter addressed.

55. On the same day, shortly after this conversation, Guidance Counselor Gambrel told Andrea Corya-York that she had spoken to Brooklyn about the TikTok and did "everything she could" or something to that effect.

56. Despite these repeated reports of bullying, sexual harassment and threats of suicide, Defendants failed to take reasonable and effective action to stop the misconduct by the Individual Student Defendants, including but not limited to disciplining them as they had done in the previous year.

57. Despite Defendants' failure to take meaningful action to stop the misconduct, Brooklyn's friends, including A.B. and L.C., continued to look out for Brooklyn and made regular reports to school officials, including Defendant Gambrel, about the bullying, harassment and sexual abuse Brooklyn was subjected to at school by the Individual Student Defendants.

58. Upon information and belief, the Individual Student Defendants engaging in the bullying, harassment and sexual abuse of Brooklyn were never disciplined for this bullying during the 2024-2025 school year.

59. Upon information and belief, Brooklyn's friends, who made frequent reports to Administration that Brooklyn was being bullied, were frequently disciplined for very trivial offenses.

60. Shortly before her death, while Brooklyn was entering her homeroom classroom, Teacher Pamela Kelley reprimanded her for being five minutes late in a harsh and punitive tone.

61. Upon information and belief, Brooklyn told Teacher Pamela Kelley that she was making her sad and that she was going to kill herself.

62.    Upon information and belief, all Teacher Pamela Kelley did in response to Brooklyn's suicide threat was to say to Brooklyn "Why would you do that… it won't make it better" or words to that effect.

63.    JCSC provides a Student Elementary Handbook to all elementary students. The Handbook states, in relevant part:

**JCSC HARASSMENT/BULLYING POLICY**

**It is the policy of Jennings County School Corporation to maintain a learning and working environment that is free from harassment and/or bullying. It shall be a violation of this policy for any employee or student of Jennings County School Corporation to harass another employee or student through unwelcome conduct or communications relative to race, color, national origin, religion, sex, age, handicapping condition, marital status, or sexual preference. This policy also applies to non- employee volunteers who work subject to the control of school authorities. This rule applies when a student is on school grounds immediately before, during, or after school hours, or at any other time when the school is being used by a school group; off school grounds at a school activity, function, or event; traveling to or from school for a school activity, function, or event; or using property or equipment provided by the school (example: use of school-owned computer to bully/harass someone via email or the Internet). Bullying is considered to be severe misconduct and will be dealt with accordingly. Principals will take appropriate disciplinary actions for bullying up to and including expulsion from school.**

**…**

**CYBERBULLYING**

**Cyberbullying or online bullying is a term used to refer to bullying over electronic media, usually through instant messaging and e-mail. Other terms for cyberbullying are electronic bullying, electronic harassment, e-bullying,**

9

**mobile bullying, online bullying, digital bullying, or internet bullying. JCSC considers cyberbullying to be the use of any electronic communications device to convey a message in any form (text, image, audio or video) that is lewd, vulgar, defames, intimidates, harasses or is otherwise intended to harm, insult or humiliate another in a deliberate, repeated, hostile or unwanted manner under a person's false or true identity. In addition, any communication of this form which disrupts or prevents a safe and positive educational or working environment may also be considered cyberbullying.**

64.    Upon information and belief, JCSC maintained a widespread, ongoing and pervasive practice of failing to enforce the written harassment, bullying and cyberbullying policies.

65.    Pursuant to Indiana Code 20-33-8-35, JCSC is required to document all "acts of bullying and abusive behaviors (1) against a victim; and (2) committed by a verified perpetrator."

66.    As a result of the bullying, harassment and sexual abuse described herein, Brooklyn exhibited clear and escalating signs of emotional distress, anxiety, and psychological harm while at school including threats of suicide, lethargy, emotional withdrawal and lack of motivation.

67.    Andrea Corya-York, who also served as Brooklyn's dance instructor, observed that Brooklyn appeared happy and engaged in dance class but consistently appeared withdrawn and emotionally down while at school, and reported same to Administration.

68.    On or about February 17, 2025, Plaintiff Benjamin Cook, Brooklyn's father, walked into Brooklyn's bedroom and discovered Brooklyn's deceased body. He went to her aide, but it was too late. Both parents watched in horror as Brooklyn's body was removed from their residence.

69.     On or about February 17, 2025, after enduring months of pervasive bullying, harassment, and sexual abuse from the Individual Student Defendants while at North Vernon Elementary School, Brooklyn Cook died as a result of suicide at age eleven (11).

### COUNT I
**42U.S.C. § 1983: Violations of the Fourteenth Amendment to the United States Constitution Against JCSC and Individual JCSC Defendants**

70.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

71.     At all times relevant to this complaint, Brooklyn Cook was a student at North Vernon, within the public school system overseen by Defendants JCSC, Superintendent Nicole Johnson, Principal Leonard Collett, and Former Principal Nicholas Hill.

72.     Defendants had a duty to create adequate policies that protected students such as Brooklyn Cook, when said students were on school property.

73.     Defendants at all times relevant to this complaint were responsible for the creation and enforcement of policies and practices to protect the students, including Brooklyn Cook, who attended schools within the JCSC.

74.     Defendants' conduct, actions, customs, policies and practices set forth herein deprived Brooklyn and Plaintiffs of equal protection and due process rights secured by the Fourteenth Amendment of the United States Constitution, all in violation of 42 U.S.C. § 1983. Upon information and belief, these unlawful actions included, but are not to, the following:

   a. Failing to create adequate policies and/or properly follow written policies in place and engaging in a practice and custom that created a tacit approval of the incidents of bullying and creating a school environment where bullying, harassment, and sexual abuse of Brooklyn is acceptable;

11

b.  Failing to properly train the Individual Defendants to properly follow policies in place to appropriately respond to bullying, harassment, and sexual abuse;

c.  Failing to protect Brooklyn from known risks of bullying, harassment and sexual abuse; and

d.  Creating a dangerous environment and increasing the harm suffered by Brooklyn by failing to provide adequate supervision despite their knowledge that Brooklyn was being subjected to repeated bullying, harassment, and sexual abuse.

75.  As described in the foregoing paragraphs, Defendants recklessly and with deliberate indifference ignored and/or routinely failed to enforce numerous policies, customs, and/or practices that caused Brooklyn Cook to receive constitutionally inadequate protection, to decline significantly in mental health, to deprive her of her constitutional rights, and ultimately to die.

76.  Defendants made a series of intentional decisions to ignore and routinely fail to enforce the above-listed practices, customs, and policies. Routinely failing to enforce the above-listed practices, customs, and policies subjected Brooklyn Cook to an unreasonable and substantial risk of serious harm. Defendants were deliberately and recklessly indifferent to these risks.

77.  Because these widespread customs, policies, and practices were routinely ignored, Brooklyn Cook was subjected to severe bullying, harassment, and sexual assault, leading to the decline in her mental health and death in violation of her constitutionally protected rights. As a result, Defendants are liable to Brooklyn Cook's estate under 42 U.S.C. § 1983 for all resulting damages.

## **<u>COUNT II</u>**

**Violation of Title IX, 20 U.S.C. 38 § 1681 *et seq.* Against Jennings County School Corporation, Superintendent Nicole Johnson and Principal Leonard Collett**

78.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

79.     During the 2024-2025 school year, Defendants JCSC, Superintendent Nicole Johnson, and Principal Leonard Collett had actual knowledge that the Individual Student Defendants were inappropriately touching and sexually abusing female students at North Vernon, including Brooklyn Cook.

80.     The Individual Student Defendants' repeated inappropriate touching and sexual abuse of female students at North Vernon constituted acts of sex-based discrimination in violation of Title IX, 20 U.S.C. 38 § 1681 *et seq*. ("Title IX").

81.     Pursuant to Indiana Code 20-33-8-35, Defendant JCSC was required to report the repeated instances of bullying and sexual abuse against Brooklyn Cook that were frequently reported to the Individual JCSC Defendants.

82.     Title IX imposes an affirmative obligation on school districts to take action to remedy existing misconduct, such as the Individual Student Defendants' acts of sex-based discrimination and harassment, and to prevent further foreseeable risks to female students at North Vernon from materializing.

83.     Upon information and belief, no Title IX investigation was performed in response to any of the multiple reports of the Individual Student Defendants' inappropriate touching and sexual abuse that occurred during the 2024-2025 school year.

84.     During the 2024-2025 school year, Defendants JCSC, Superintendent Johnson, and Principal Collett had the authority to institute corrective measures, including but not limited to disciplining the Individual Student Defendants up to and including expulsion from the school

13

for inappropriately touching and sexually harassing female students at North Vernon, including Brooklyn Cook, yet failed to take any reasonable action.

85.    Defendants' lack of reasonable response to reports of the Individual Student Defendants inappropriately touching and sexually harassing female students at North Vernon amounted to an official decision *not to take action* to end or limit the Individual Student Defendants' harassment of female students.

86.    Defendants JCSC, Superintendent Johnson, and Principal Collett remained deliberately indifferent to the Individual Student Defendants' acts of student-on-student harassment, of which Defendants had actual knowledge.

87.    By their deliberate indifference to the Individual Student Defendants' inappropriate touching and sexual harassment of female students during the 2024-2025 school year, Defendants JCSC, Superintendent Johnson, and Principal Collett put female students at North Vernon, including Brooklyn Cook, at great risk and unreasonable risk of further inappropriate touching and sexual harassment by the Individual Student Defendants.

88.    As a direct and proximate results of Defendants' Title IX violations, Brooklyn Cook suffered injuries of a personal and pecuniary nature including, but not limited to, pain, suffering, physical, mental and emotional trauma, loss of enjoyment of life, medical expenses, and death.

**<u>COUNT III</u>**
**Wrongful Death Against JCSC and Individual JCSC Defendants**

89.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

90.    Defendants owed Brooklyn a duty to exercise reasonable care to protect Brooklyn and care for her safety and to provide a safe educational environment free from harassment, bullying and sexual abuse.

91.    Defendants owed a duty of reasonable supervision over their students for the safety of other students, including Brooklyn.

92.    Pursuant to their own policies and procedures, Defendants owed a duty to Brooklyn, and other students similarly victimized, to properly investigate incidents of bullying, harassment and sexual abuse immediately upon learning of the incidents.

93.    Defendants breached that duty by failing to properly train and supervise its employees, as well as supervise and discipline the students at North Vernon Elementary School, to respond appropriately in order to prevent the repeated and egregious bullying, harassment, and sexual abuse to which Brooklyn was subjected to while enrolled as a student within the Jennings County School Corporation.

94.    JCSC is liable as a principal for all torts committed by its employees within the course and scope of their employment, described herein, via the doctrine of *respondeat superior.*

95.    As a direct and proximate result of the acts described herein, Brooklyn suffered psychological trauma, emotional pain, and death.

96.    As a result of the Defendants' negligence, Brooklyn suffered a fatal bodily injury under Indiana common law and wrongful death under I.C. § 34-23-2-1, for which her estate is entitled to recover damages against governmental entities pursuant to I.C. § 34-13-3-3. All of the Defendants' wrongful conduct proximately caused Brooklyn's death.

WHEREFORE, Plaintiffs, Benjamin Cook and Sarah Cook, as Personal Representatives of the Estate of Brooklyn Cook, by counsel, pray that the Court enter judgment against the

Defendants and for the Plaintiffs in an amount sufficiently reasonable to compensate the Plaintiffs for the damages set for forth above and for all damages available pursuant to the provisions of Indiana Code Sec. 34-23-4 *et seq*., for the cost of this action, for attorneys' fees, for interest as allowed by law, and for all other proper relief just and proper in the premises.

<u>**COUNT IV**</u>
**Wrongful Death against Individual Student Defendants**

97.     Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

98.     Defendants owed Brooklyn a duty to act with the standard of conduct which would ordinarily be exercised by minors of same age, experience, intelligence, and education level.

99.     Defendants breached that duty when they relentlessly bullied, harassed and sexually abused Brooklyn.

100.    As a direct and proximate result of the acts described herein, Brooklyn suffered psychological trauma, emotional pain, and death.

101.    As a result of the Defendants' negligence, Brooklyn suffered a fatal bodily injury under Indiana common law and wrongful death under I.C. § 34-23-2-1, for which her estate is entitled to recover damages against governmental entities pursuant to I.C. § 34-13-3-3. All of the Defendants' wrongful conduct proximately caused Brooklyn's death.

WHEREFORE, Plaintiffs, Benjamin Cook and Sarah Cook, as Personal Representatives of the Estate of Brooklyn Cook, by counsel, pray that the Court enter judgment against the Defendants and for the Plaintiffs in an amount sufficiently reasonable to compensate the Plaintiffs for the damages set for forth above and for all damages available pursuant to the

provisions of Indiana Code Sec. 34-23-4 *et seq.*, for the cost of this action, for attorneys' fees, for interest as allowed by law, and for all other proper relief just and proper in the premises.

## COUNT V
### Negligence Against JCSC and Individual JCSC Defendants

102.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

103.    Defendants owed a legal duty to Brooklyn to provide a safe educational environment free from bullying, harassment, and sexual abuse.

104.    Defendants owed a duty of reasonable supervision over their students for the safety of other students, including Brooklyn.

105.    Defendants owed a duty to Brooklyn to properly and timely address incidents of bullying, harassment, and sexual abuse of students at North Vernon.

106.    Defendants were negligent in that they knew or should have known that their conduct would cause physical and emotional pain and suffering to Brooklyn and Plaintiffs.

107.    Brooklyn's death after months of bullying, harassment, and sexual abuse at North Vernon was reasonably foreseeable to Defendants.

108.    Defendants' negligence is the direct and proximate cause of the emotional and psychological harm suffered by Brooklyn leading up to her death.

109.    Defendants' negligence is the also the direct and proximate cause of Brooklyn's death and the emotional harm and loss of services, love and companionship suffered by Plaintiffs due to the untimely death of their daughter.

WHEREFORE, Plaintiffs, Benjamin Cook and Sarah Cook, Individually, and as Personal Representatives of the Estate of Brooklyn Cook, by counsel, pray that the Court enter judgment against the Defendants and for the Plaintiffs in an amount sufficiently reasonable to compensate

the Plaintiffs for the damages set for forth above for the cost of this action, for attorneys' fees, for interest as allowed by law, and for all other proper relief just and proper in the premises

## COUNT VI
### Negligence against Individual Student Defendants

110. Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

111. Defendants owed Brooklyn a duty to act with the standard of conduct which would ordinarily be exercised by minors of same age, experience, intelligence, and education level.

112. Defendants breached that duty when they relentlessly bullied, harassed and sexually abused Brooklyn.

113. Defendants were negligent in that they knew or should have known that their conduct would cause physical and emotional pain and suffering to Brooklyn and Plaintiffs.

114. Brooklyn's death after months of bullying, harassment, and sexual abuse was reasonably foreseeable to Defendants.

115. Defendants' negligence is the direct and proximate cause of the emotional and psychological harm suffered by Brooklyn leading up to her death.

116. Defendants' negligence is the also the direct and proximate cause of Brooklyn's death and the emotional harm and loss of services, love and companionship suffered by Plaintiffs due to the untimely death of their daughter.

WHEREFORE, Plaintiffs, Benjamin Cook and Sarah Cook, Individually and as Personal Representatives of the Estate of Brooklyn Cook, by counsel, pray that the Court enter judgment against the Defendants and for the Plaintiffs in an amount sufficiently reasonable to compensate

the Plaintiffs for the damages set for forth above, for the cost of this action, for attorneys' fees, for interest as allowed by law, and for all other proper relief just and proper in the premises

## COUNT VII
**Negligent Hiring, Training, Supervision and Retention**
**Against JCSC, and Defendants Johnson, Collett and Hill**

117.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

118.    Defendants, and each of them, were negligent in failing to exercise due care in supervising and training Defendants Kelley, Alford, Gambrel, and Driver in how to properly respond to bullying, harassment, sexual abuse, and reports of bullying, harassment, sexual abuse and suicidal threats and ideations.

119.    Defendants failed to provide appropriate training to Defendants Kelley, Alford, Gambrel, and Driver and could have reasonably foreseen that inappropriately training them, and/or failing to supervise them created a risk of harm to students, including Brooklyn.

120.    Defendants' negligence in supervising and training Defendants Kelley, Alford, Gambrel, and Driver was the proximate cause of Brooklyn's injuries and damages.

WHEREFORE, Plaintiffs, Benjamin Cook and Sarah Cook, as Personal Representatives of the Estate of Brooklyn Cook, by counsel, pray that the Court enter judgment against the Defendants and for the Plaintiffs in an amount sufficiently reasonable to compensate the Plaintiffs for the damages set for forth above, for the cost of this action, for attorneys' fees, for interest as allowed by law, and for all other proper relief just and proper in the premises

## COUNT VIII
**Negligent Infliction of Emotional Distress Against All Defendants**

19

121.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

122.    On or about February 17, 2025, Plaintiff Benjamin Cook discovered Brooklyn's body after she had committed suicide and witnessed the gruesome aftermath of her death.

123.    In their actions and repeated failures to act, Defendants engaged in extreme and outrageous conduct that went beyond all possible bounds of decency and were atrocious and utterly intolerable in a civilized society.

124.    The actions and inactions of the Defendants, as set forth above, were either grossly negligent, intentional or reckless.

125.    The actions and inactions of the Defendants, as set forth above, caused and continue to cause severe emotional distress to the Plaintiff Benjamin Cook when he came upon his daughter Brooklyn's body.

126.    As a direct and proximate result of Defendants' negligence, Plaintiff Benjamin Cook has suffered, and will in the future continue to suffer, mental anguish, loss of enjoyment of life, emotional and psychological harm, and other past, present and future damages.

WHEREFORE, Plaintiffs, Benjamin and Sarah Cook, individually pray for the Court to enter judgment against Defendants for the damages suffered by Brooklyn Cook and Plaintiffs, in an amount to be proven at trial including compensatory damages, general and special damages, punitive damages, for the costs of this action, and for all other relief just and proper in the premises.

## <u>COUNT IX</u>
**Alternate Survival Action Against all Defendants**

127.    Plaintiffs incorporate by reference all preceding paragraphs of this Complaint as if fully set forth herein.

128. The Defendants all owed Brooklyn Cook a duty of care.

129. The Defendants breached that duty of care by their acts of carelessness and negligence as set forth above.

130. The acts and omissions of the Defendants caused Brooklyn Cook's losses and damages,

131. As a result of the Defendants' carelessness and negligence, Brooklyn Cook sustained injuries resulting in pain, suffering, and death. For a period of months leading up to the date of her death, Brooklyn Cook's mental injuries impaired the quality and enjoyment of her life.

132. The injuries and resulting damages to Brooklyn Cook were a direct and proximate result of the carelessness and negligence of the Defendants.

WHEREFORE, Plaintiffs, Benjamin Cook and Sarah Cook, as Personal Representatives of the Estate of Brooklyn Cook, by counsel, pray that the Court enter judgment against the Defendants and for the Plaintiffs in an amount sufficiently reasonable to compensate the Estate for Brooklyn Cook's pain and suffering, interest allowed by law, and all other just and proper relief to which Brooklyn Cook would have been entitled had she survived, in law or in equity.

## DEMAND FOR JURY TRIAL

Come now the Plaintiffs, Ben Cook and Sarah Cook, Individually and as Personal Representatives of the Estate of Brooklyn Cook, a deceased minor, and demand that the above Complaint and all issues there in be tried by jury.

Respectfully submitted,

**COHENMALAD, LLP**

*/s/ Gregory Laker*　　　　　　　　

21

Gregory L. Laker, #10322-49
Andrea R. Simmons, #11622-49
Gabriel A. Hawkins, #23449-53
Molly K. McMath, #38954-49
One Indiana Square, Ste. 1400
Indianapolis, IN 46204
Ph: (317) 636-6481
Fax: (317) 636-2593
glaker@cohenandmalad.com
asimmons@cohenandmalad.com
ghawkins@cohenandmalad.com
mmcmath@cohenandmalad.com